1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT S. CARLBORG,<br><br>                              Plaintiff,<br><br>v.<br><br>DEPARTMENT OF NAVY and<br>DEPARTMENT OF DEFENSE,<br><br>                              Defendants. | Case No.:  3:23-cv-02073-RBM-AHG<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br>**[Doc. 22]** |

This action is brought under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), and the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*  Plaintiff Robert S. Carlborg ("Plaintiff"), proceeding *pro se*, filed a Complaint against two federal agencies, the Department of Navy and the Department of Defense (collectively, "Defendants"), based on alleged violations of his right to access certain records ("Complaint").  (Doc. 1.)

Pending before the Court is Defendants' Motion for Summary Judgment ("MSJ"). (Doc. 22.)   In the MSJ, Defendants argue that: (1) certain claims are barred under res judicata; (2) their searches in response to Plaintiff's requests were reasonable; and (3) certain information was properly withheld under FOIA's statutory exemptions.  (*Id.* at 7.)[1] Plaintiff filed an Opposition to the MSJ ("Opposition") (Doc. 24), and Defendants filed a

---

[1] The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for other citations unless otherwise noted.

Reply ("Reply) (Doc. 25).

The Court finds the matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Defendants' MSJ is **GRANTED**.

# I. BACKGROUND[2]

Since 2016, Plaintiff has submitted numerous FOIA and Privacy Act requests for records related to his involuntary discharge from the military in 2015. (Doc. 22 at 7.) Several of these requests were the subject of litigation before the United States District Court, District of Columbia captioned *Carlborg v. Dep't of the Navy*, Case No. 1:18-cv-1881 (DLF) (D.D.C. Aug. 10, 2018) ("*Carlborg I*").[3] Because Plaintiff's legal challenges in *Carlborg I* are pertinent to the resolution of the MSJ, the Court summarizes two of Plaintiff's requests at issue in *Carlborg I* and the resulting proceedings.

## A. FOIA Requests From 2016–2018

Between 2016 and 2018, Plaintiff submitted several FOIA and Privacy Act requests to Defendant Department of Navy ("Defendant Navy"). (Doc. 22-5, Ex. 5, Memorandum Opinion in *Carlborg I* ["D.C. Order"] at 114.) The following two requests are particularly relevant to the instant litigation.

### 1. The 2016 FOIA Request

On February 21, 2016, Plaintiff submitted a FOIA request for "a copy of any e-mail sent or received between [nine officers] during the periods 30 Jun 2014–9 Oct 2015

---

[2] This background section is taken from the Complaint, the Parties' briefing, and the judicially noticed court filings (*see infra* n.3). It is intended solely to provide context and does not state the undisputed facts of the case. The facts material to Defendants' MSJ, disputed or undisputed, are discussed *infra* where appropriate.

[3] The Court **GRANTS** Defendants' Request for Judicial Notice (Doc. 22-4) and takes judicial notice of the six court documents filed in *Carlborg I* (Doc. 22-5, Exs. 1–6). *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of a state court decision and the briefs filed for res judicata purposes).

regarding the conduct of the[ir] handling of" Plaintiff's disciplinary case (the "2016 FOIA Request").[4]  (Doc. 22-3, Ex. 1 at 12–13; *see* D.C. Order [Doc. 22-5, Ex. 5] at 114.)

The Staff Judge Advocate for the Second Marine Expeditionary Force ("II-MEF") processed the 2016 FOIA Request and submitted an internal request for this data to the Marine Corps Cyber Operations Group[5] ("MCCOG").  (*See* Doc. 22-5, Ex. 2 at 11.)  The MCCOG searched the nine individuals' e-mails for the specified time frame using the search term "Carlborg."  (D.C. Order [Doc. 22-5, Ex. 5] at 117 (citation omitted).)  It then uploaded the results of that search onto a compact disc (the "2016 CD").  (*See* Doc. 22-5, Ex. 2 at 11.)  The II-MEF reviewed the records for information subject to withholding, applied certain redactions, and released the redacted records to Plaintiff.  (*Id*.)

## 2.    The 2017 FOIA Request

On August 9, 2017, Plaintiff filed another FOIA request for "emails to or from [an] officer that mentioned 'Carlborg' between March 1, 2015, and October 31, 2015," as well as responses to such emails (the "2017 Request").  (D.C. Order [Doc. 22-5, Ex. 5] at 115 (citations omitted).)  The agency collected the officer's ".pst" file, which stores "copies of messages, calendar events, and other items within Microsoft software, such as Microsoft Outlook."  (*Id*. at 115 (citation omitted).)  After withholding certain information under 5 U.S.C. § 552(b)(5)–(6), the agency produced such records to Plaintiff.  (*Id*.)

## B.    *Carlborg I*

On August 10, 2018, Plaintiff filed a civil action in the United States District Court, District of Columbia ("D.C. Court") challenging Defendant Navy's responses to several requests, including the 2016 and 2017 FOIA Requests.  (*Id*. at 114.)  There, Plaintiff alleged that Defendant Navy improperly withheld certain materials responsive to the 2017 FOIA

---

[4] The 2016 FOIA Request was assigned the tracking number DON-USMC-2016-003723. (D.C. Order [Doc. 22-5, Ex. 5] at 117.)

[5] The MCCOG was formerly known as the Marine Corps Network Operations and Security Center ("MCNOSC").  (*See* Doc. 22-5, Ex. 2 at ¶ 15; *id*., Ex. 3 at 61 n.1.)

Request and conducted inadequate searches in response to his requests, including the 2016 FOIA Request. (*Id.* at 114–17.) Plaintiff moved for partial summary judgment and Defendant Navy filed a cross motion for summary judgment. (*Id.* at 114.)

On August 10, 2020, the D.C. Court granted summary judgment in favor of Defendant Navy. (*Id.* at 114, 131.) As relevant to this action, the D.C. Court held that Defendant Navy conducted an adequate search for records responsive to the 2016 FOIA Request and properly invoked two statutory exemptions to withhold records responsive to the 2017 FOIA Request. (*Id.* at 123–25, 128–130.) The D.C. Court also denied Plaintiff's request for an *in camera* review of the 2016 CD. (*Id.* at 124–25.) It reasoned that the record did not contain evidence to support Plaintiff's speculative claims that "someone could have 'manipulated, redacted and eliminate[d] files or documents unfavorable' to [Defendant] Navy before the material was processed under FOIA." (*Id.* at 124.) On Plaintiff's appeal, the United States Court of Appeals for the District of Columbia Circuit affirmed summary judgment in favor of Defendant Navy. (Doc. 22-5, Ex. 6 at 132–34.)

## C. Recent Requests

Several months after the D.C. Court's judgment, Plaintiff filed thirteen additional, but related, FOIA and Privacy Act requests which are the subject of the present litigation. (*See* Compl. ¶¶ 8–11.) In these Requests, Plaintiff seeks records from Defendants and their component agencies including the United States Marine Corps ("USMC"), the Board for Corrections of Naval Records ("BCNR"), and the Office of the Secretary of Defense ("OSD"). (*Id.* ¶¶ 5–7.)

### 1. FOIA Requests 1, 3, and 4

On February 9, 2020, Plaintiff submitted a FOIA request "for a copy of e-mail records pertaining to him" ("FOIA Request 1"). (*Id.* ¶ 12.) Defendants provided 161 pages with redactions based on two statutory exemptions. (*Id.* ¶ 14.) Plaintiff filed an administrative appeal challenging Defendants' withholdings under such exemptions, which was subsequently denied. (*Id.* ¶¶ 15–16.)

On September 29, 2021, Plaintiff submitted a FOIA request "for copies of e-mail

records pertaining to him" sent to or from 11 individuals between October 1, 2020 to the date of the request which contain the term "Carlborg" in the subject line, e-mail body, or in any attachment. ("FOIA Request 3"). (*Id*. ¶ 40; Doc. 22-3, Ex. 2 at 29.) Plaintiff also requested that the agency provide the responsive records "in a .pdf file one per mailbox." (Doc. 22-3, Ex. 2 at 29.) Defendants provided Plaintiff with responsive records and withheld certain information under 5 U.S.C. § 552(b)(6). (Compl. ¶ 41.) Plaintiff administratively appealed Defendants' withholdings, the format of the records, and the adequacy of its search. (*Id*. ¶ 42.) Defendants partially granted his appeal as to the records' format. (*Id*. ¶ 43.) Plaintiff again administratively appealed Defendants' response on remand for failure to comply with Plaintiff's requested format, which was fully denied on September 27, 2022. (*Id*. ¶¶ 45–47.)

On December 27, 2021, Plaintiff submitted a FOIA request "for copies of e-mail records pertaining to him" sent to or from 16 individuals between August 1, 2014 to the date of the request ("FOIA Request 4"). (*Id*. ¶ 48; Doc. 22-3, Ex. 2 at 149.) Similar to FOIA Request 3, Plaintiff requested that the agency provide responsive records "in a .pdf file one per mailbox." (Doc. 22-3, Ex. 7 at 149.) After Defendants provided Plaintiff with redacted records, Plaintiff filed an administrative appeal based on improper statutory withholdings, the withholding of segregable non-exempt information, and formatting. (Compl. ¶ 49.) Defendants partially granted the appeal as to the segregable information and two statutory withholdings. (*Id*. ¶ 50.) Defendants denied the appeal as to the material withheld under § 552(b)(6) but did not address the formatting issue. (*Id*. ¶ 51.)

## 2.    The FOIA 2 Requests

Between November 2020 and July 2021, Plaintiff submitted five FOIA requests seeking the contents of the 2016 CD that the MCCOG created while processing the 2016 FOIA Request (collectively, the "FOIA 2 Requests").[6] (*Id*. ¶¶ 17–39.) On November 4,

---

[6] Plaintiff refers to these FOIA requests as subsets of "USMC #2." (Compl. ¶¶ 17–39.)

2020, Plaintiff filed the first of the FOIA 2 Requests for "a copy of e-mail records pertaining to him provided to II MEF on [the 2016 CD] in April 2016 in response to [the 2016 FOIA Request]." (*Id*. ¶ 17.) Plaintiff specifically requested that "a search be re-conducted of the [2016 CD] for any potentially responsive records previously withheld." (Doc. 22-3, Ex. 1 at 6–7.) The agency responded that it could not perform the search because it was unable to locate the 2016 CD and that "due [to the 2016 CD] being over 4 years old, [it] may have been destroyed, per record keeping protocol." (*Id*. at 4.)

On December 16, 2020, Plaintiff filed a second request for a "review and release of all records from the copy of Work Order #212705 maintained by [the MCCOG] that were produced in response to [the 2016 FOIA Request]." (Doc. 22-3, Ex. 10 at 183; *see* Compl. ¶ 20.) "Work Order #212705" refers to the agency's internal request used to generate the search for the 2016 FOIA Request and create the 2016 CD. (*See id*., Ex. 3 at 63.) Defendant Navy denied this Request as duplicative and stated that Plaintiff "essentially asks II MEF to re-open and re-process the substance of [his] 2016 FOIA request." (*Id*., Ex. 10 at 176; *see id*. at 178.) Defendant Navy asserted that it had "already fully processed [his] 2016 FOIA request . . . , including searching for and releasing responsive materials[,]" and the D.C. Court determined this search was "reasonably calculated to uncover all relevant documents' responsive to [his] requests." (*Id*. (citation omitted).)

Plaintiff filed three more requests seeking the same "e-mail records pertaining to him from the MCCOG copy" of the records responsive to the 2016 FOIA Request. (Compl. ¶¶ 25, 28–29.) In response, Defendant Navy provided Plaintiff with an identical copy of the records previously produced in response to the 2016 FOIA Request and denied the other requests as duplicative. (*Id*. ¶¶ 26, 30.) Plaintiff administratively appealed Defendant Navy's responses. (Doc. 22-3, Ex. 10 at 179–80.) As part of his appeal, Plaintiff requested that Defendant Navy "release additional materials not released in response to [the 2016 FOIA Request]," and that it "maintain an independent copy of all responsive materials based on [his] suspicion that II-MEF has illegally destroyed records." (*Id*. at 179.)

On May 19, 2021, Defendant Navy denied Plaintiff's appeal and found that such

6

appeals were "an attempt to reopen matters that have previously been settled by your administrative appeals and subsequent litigation." (*Id.* at 180.)  Defendant Navy also stated that it was "reasonable for the [USMC] to decline to conduct new, additional searches for responsive records to this or similarly worded requests for information.  The [USMC] has already conducted a search for these records, provided the requested materials, extensively conducted administrative reviews of your request, and successfully defended the adequacy of its search and response in federal court." (*Id.*, Ex. 3 at 180.)

### 3.    FOIA Requests 5, 6, and 7

In 2022, Plaintiff submitted three more FOIA requests for information also related to the 2016 FOIA Request and the 2017 FOIA Request.

### a.  FOIA Request 5

On April 11, 2022, Plaintiff requested "a copy of the file properties from the [2016 CD] created . . . in support of" the 2016 FOIA Request ("FOIA Request 5").[7]  (Doc. 22-3, Ex. 3 at 69; *see* Compl. ¶ 53.)  Plaintiff specifically sought "a copy of the properties of each file on the [2016] CD from the dialog box tab that includes name of file, size, and the creation date which is registered for each file.  The properties dialog box for each file on the [2016] CD can be opened simultaneously and a screenshot taken of all of the open dialog boxes." (Doc. 22-3, Ex. 3 at 69.)

Defendant Navy initially provided Plaintiff with responsive records but withheld certain portions of the records under 5 U.S.C. § 552(b)(6).  (*Id.* at 72.)  However, on May 23, 2022, however, Defendant Navy updated its response and asked Plaintiff to "discard all responsive records previously provided for [FOIA Request 5 because] [t]hose records were provided as a good faith assumption that [Plaintiff] desired the information from the recreation of [the 2016 CD] that has been used for all search requests." (*Id.* at 63.)

Plaintiff filed an administrative appeal as to Defendant Navy's response and claimed

---

[7] Plaintiff refers to this request as "USMC #5."  (Compl. ¶ 53.)

7

that the documents produced were "*not* the records that [he] requested" because he requested "a copy of the properties of the files from the [2016 CD], however the location listed for each of these files [was] from a shared network folder," not from the 2016 CD. (*Id.* at 65; *see* Compl. ¶ 55.)  On August 8, 2022, Defendant Navy denied his appeal and cited the same reasons for denying the FOIA 2 Requests such as the fact that the 2016 CD no longer exists, that it had recreated the 2016 CD's contents to respond to his recent Requests, and that it had "successfully defended the adequacy of its search and response in federal court."  (*Id.* at 58–59; *see id.*, Ex. 10 at 179–80.)

### b.  FOIA Requests 6 and 7

On May 12, 2022, Plaintiff filed two FOIA requests.  In the first request, Plaintiff sought "a copy of the records that list what is within the eight individual .psts contained on the [2016 CD] created in response to" his 2016 FOIA Request ("FOIA Request 6").  (Doc. 22-3, Ex. 4 at 92; *see* Compl. ¶ 57.)  Plaintiff specified that he "is not requesting a copy of the emails or the attachments from the .psts but [he] requests that these screenshots/.pdfs capture every record from each .pst" according to his detailed formatting specifications. (*Id.*)  Plaintiff also requested "the same screenshots/.pdfs from the eight .psts that were provided to II MEF by the FOIA officer from" the MCCOG.  (*Id.* at 87.)  In the second request, Plaintiff sought "a copy of the records that list what is within the copy of the .pst created in response to" the 2017 FOIA Request ("FOIA Request 7").  (*Id.* at 88; *see* Compl. ¶ 61.)  Plaintiff requested these records be produced according to the same specifications outlined in FOIA Request 6.  (*Id.*)

Defendants concurrently denied FOIA Requests 6 and 7 as duplicative of the 2016 FOIA Request and the 2017 FOIA Request, respectively.  (*Id.* at 85.)  For both Requests, Defendants asserted that the "responsive records had already been provided to [Plaintiff] in [his] elected form and format."  (*Id.* at 85, 96.)  Plaintiff's administrative appeals from these denials were subsequently denied.  (*Id.* at 88.)  By requesting that the agency "create screenshots using the Microsoft Outlook software program and existing agency records," Defendants reasoned that Plaintiff effectively requested the creation of "new records of

responsive records that [he] already received." (*Id*.)

### 4.    DON Request

On March 28, 2023, Plaintiff filed a FOIA Request "for a copy of records" in Defendant Navy's possession (the "DON Request"). (Compl. ¶ 79.) As of the date of the Complaint, Plaintiff had not received a response to the DON Request. (*Id*. ¶ 81.)

### D.    The Privacy Act Requests

Between September and December 2022, Plaintiff filed two requests with Defendants for records under the Privacy Act. (Compl. ¶¶ 65, 73.)

### 1.    BCNR Requests

In September 2022, Plaintiff filed two requests for records to the BCNR under FOIA and the Privacy Act (collectively, the "BCNR Requests"). Plaintiff filed a Privacy Act request for "a copy of his record from a [system of records] maintained by the BCNR." (*Id*. ¶ 65.) He also filed a similar FOIA request for "a copy of records in [the BCNR's] possession." (*Id*. ¶ 69.) In response to the BCNR Requests, Defendants provided Plaintiff with responsive records and withheld certain portions under a FOIA statutory exemption. (*Id*. ¶¶ 66, 70; *see* Doc. 22-1, Ex. 2 at 53–54.) One of these records was a document titled "Recorder's Log." (*See* Doc. 22-1, Ex. 3 at 77.) The Recorder's Log details the "Board of Correction [cases] for two individuals, whose different cases were heard by the same board on [May 19, 2022]." (*Id*.) In this record, Defendants redacted information "pertain[ing] to a different third-party BCNR applicant" including the applicant's name, the breakdown of the Board's voting on his case, whether a hearing was requested, and other case comments. (*Id*.; *see id*., Ex. 2 at 53.) In his administrative appeal, Plaintiff argued that "a FOIA exemption cannot be the sole justification for withholding under the [Privacy Act]." (Compl. ¶ 67.) Defendants denied Plaintiff's appeal. (*Id*. ¶¶ 68, 72.)

### 2.    DOD Request

On December 10, 2022, Plaintiff submitted requests under the Privacy Act and FOIA for "a copy of his record from a [system of records] maintained by the" OSD (the "DOD Request"). (*Id*. ¶ 73.) Defendants provided Plaintiff with a copy of his records partially

redacted under 5 U.S.C. § 552(b)(6).  (*Id.* ¶ 76.)  Similar to the BCNR Request, Plaintiff argued in his administrative appeal that "a FOIA exemption cannot be the sole justification for withholding under the [Privacy Act]."  (*Id.* ¶ 77.)  Plaintiff has not yet received a response to his appeal.  (Doc. 24 at 9.)

### E.    Procedural History

On November 9, 2023, Plaintiff filed the instant Complaint challenging Defendants' response to several of his FOIA and Privacy Act Requests filed after February 2020. (Compl. ¶¶ 6–11.)  Plaintiff asserts eight causes of actions for: (1) failure to respond within the statutory period under 5 U.S.C. § 552(a)(6)(C); (2) improper withholding of reasonably segregable non-exempt information under 5 U.S.C. § 552(a)(8)(A)(ii); (3) improper withholding of information under 5 U.S.C. § 552(b)(5) ("FOIA Exemption 5"); (4) improper withholding of  information under 5 U.S.C. § 552(b)(6) ("FOIA Exemption 6"); (5) improper withholding of information under 5 U.S.C. § 552(b)(7)(C) ("FOIA Exemption 7"); (6) improper withholding of information under the Privacy Act; (7) failure to conduct an adequate search under FOIA; and (8) failure to provide records in the format requested under 5 U.S.C. § 552(a)(3)(B).

### 1.    Joint Statements

On March 8, 2024, the Parties participated in an Early Neutral Evaluation ("ENE") before Magistrate Judge Allison H. Goddard.  (Doc. 11 at 1; *see* Doc. 16.)  Prior to the ENE conference, the Parties filed a Joint Case Management Statement where they "agree[d] that this case should be resolved via summary judgment briefing" on the following three legal issues: (1) the adequacy of Defendants' searches in response to Plaintiff's requests; (2) the propriety of Defendants' withholdings under FOIA's statutory exemptions; and (3) the application of res judicata to Plaintiff's claims.  (Doc. 14 at 3–4.)

Shortly thereafter, the Parties were ordered to file a Joint Report providing an "agreed-upon list" of representative withholdings and "other areas of dispute that need to be submitted in a motion for summary judgment."  (Doc. 17 at 1–3.)  In response, Plaintiff identified 47 pages from the released records which represent the disputed withholdings,

or the "representative" withholdings, in each asserted category of statutory exemptions.[8] (*See* Doc. 22-1, Decl. of Katherine L. Parker ["Parker Decl."], Ex. 1 at 5.)  The Parties' listed "areas of dispute" consisted of the same three issues previously asserted in the Joint Case Management Statement.  (*See id*.; *see also* Doc. 14 at 3–4.)

### 2.    Motion for Summary Judgment

On November 20, 2024, Defendants filed the instant MSJ based on three previously listed legal issues.  (Doc. 22 at 7.)  Additionally, "Defendants concede that [Exemption 7] does not apply" to the representative withholding for this exemption.  (Doc. 22 at 12 n.1.) Defendants claim such withholdings are nonetheless justified under Exemption 6.  (*Id*.)

In his Opposition, Plaintiff further narrowed the issues by stating that: (1) Count 1, in part, "is no longer an issue for the Court" based on Defendants' alleged delay in processing the DON Request; (2) Count 2 for segregability "should be dismissed" because "all reasonably segregable information has been released"; and (3) Count 3 should be dismissed because "all withheld materials under [Exemption 5]" fell within its scope. (Doc. 24 at 9–10.)  As to Count 5 for improper withholding under Exemption 7, Plaintiff notes Defendants' concession and requests that "the Court consider this exemption waived for all other" records responsive to FOIA Request 4.  (*Id*. at 14.)

Accordingly, the following are **<u>DISMISSED:</u>** Count 1 (delayed processing) in part as to the DON Request only;[9] Count 2 (segregability); Count 3 (improper withholding

---

[8] "Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved."  *In re DOJ*, 999 F.2d 1302, 1318 (8th Cir. 1993) (quoting *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991)).

[9] Count 1 applies to both the DON Request and the DOD Request.  (Compl. ¶ 99.)  In the Opposition, Plaintiff only voluntarily dismisses Count 1 as to the DON Request but not the DOD Request.  (*See* Doc. 24 at 9.)

under Exemption 5); and Count 5 (improper withholding under Exemption 7)[10].  The following causes of action remain: (1) Count 1 as to the DOD Request only; (2) Count 4 for improper withholdings under Exemption 6; (3) Count 6 for improper withholdings under the Privacy Act; (4) Count 7 for failure to conduct an adequate search under FOIA; and (5) Count 8 for failure to comply with requested formatting.

## II.  <u>LEGAL STANDARD</u>

### A.  FOIA

"FOIA entitles private citizens to access government records." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).  Under FOIA "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).  The "core purpose of the FOIA [is to] contribut[e] significantly to public understanding of the operations or activities of the government." *DOJ v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 775 (1989) (internal quotation marks and citation omitted).

"While FOIA 'establishes a judicially enforceable public right' to secure access to government records, it also 'contemplates that some information may legitimately be kept from the public.'" *Minier*, 88 F.3d at 800 (quoting *Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 639 F.3d 876, 882–83 (9th Cir. 2010)).  FOIA provides nine exemptions that permit federal agencies to withhold information otherwise subject to FOIA's disclosure requirement.  *Id.* at 883; *see* 5 U.S.C. § 552(b)(1)–(9).  These exemptions "reflect a recognition that 'legitimate governmental and private interests could be harmed by release of certain types of information.'" *ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 483 (9th Cir. 2018) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152

---

[10] Although Count 5 for improper withholdings under Exemption 7 has been dismissed, the Court will nonetheless assess the propriety of the disputed withholdings for FOIA Request 4 under Exemption 6.

(1989)).  In keeping with FOIA's goals, the nine exemptions must be construed narrowly.  *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979).  "Where the government withholds documents pursuant to one of the enumerated exemptions of FOIA, 'the burden is on the agency to sustain its action.'"  *Minier*, 88 F.3d at 800 (quoting 5 U.S.C. § 552(a)(4)(B)).

### B.    The Privacy Act

FOIA and the Privacy Act are structurally similar.  *See Rojas v. FAA*, 941 F.3d 392, 396 (9th Cir. 2019) ("Although FOIA and the Privacy Act are different in design and scope, they both contemplate that members of the public will have access to public records, subject to specified exemptions.").  "The Privacy Act governs the disclosure of, access to, and amendment of records on individuals that are maintained by federal agencies."  *Lane v. Dep't of Interior*, 523 F.3d 1128, 1138 (9th Cir. 2008) (citing 5 U.S.C. § 552a).  Like FOIA, the Privacy Act "gives individuals a right to gain access to government records concerning themselves 'upon request.'"  *Id*. (citing 5 U.S.C. § 552a(d)(1)); *see* 5 U.S.C. §§ 552a(e)(4)(G), (f)(1).  While "[they] substantially overlap . . . the two statutes are not completely coextensive."  *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 78 (D.C. Cir. 1982).  The Privacy Act's goal is to "protect the privacy of individuals through regulation of the collection, maintenance, use, and dissemination of information by federal agencies."  *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 413 (9th Cir. 2009) (cleaned up).

### C.    Summary Judgment

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved."  *Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006) (quoting *Nat'l Res. Def. Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005)).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute."

13

*Minier*, 88 F.3d at 800 (citing *Schiffer v FBI*, 78 F3d 1405, 1409 (9th Cir 1996)).  Rather, to prevail on summary judgment in a right of access case under both the Privacy Act and FOIA, "[t]he agency must: 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Lane v. Dep't of Interior*, 523 F.3d 1128, 1139 n.9 (9th Cir. 2008) ("*Zemansky* discussed the search burden in a FOIA case, but the same standard applies to Privacy Act cases.").  "[A]t the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the [C]ourt may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (cleaned up).  The agency's affidavit is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up).

If an agency withholds information responsive to a FOIA request, it also bears the burden to prove that the information falls within a one of the nine FOIA exemptions to the disclosure requirement.  *See Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994); *see also Chambers*, 568 F.3d at 1003 ("[T]he court may rely on a reasonably detailed affidavit" in reviewing a Privacy Act disclosure claim).  To satisfy this burden on summary judgment, "agencies are typically required to submit an index and 'detailed public affidavits,'" commonly referred to as a *Vaughn* index.  *Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 688 (9th Cir. 2011) (quoting *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004)).[11]  "A *Vaughn* Index must: (1) identify each document withheld; (2) state the

---

[11] This term derives from the seminal case *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (rejecting an agency's conclusory affidavit which stated that requested FOIA documents were subject to exemption).

14

statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n. 1 (9th Cir. 1995). Such submissions must be "from 'affiants who are knowledgeable about the information sought' and 'detailed enough to allow court[s] to make an independent assessment of the government's claim of exemption.'" *Yonemoto*, 686 F.3d at 688 (cleaned up) (quoting *Lion Raisins*, 354 F.3d at 1079). "[S]ummary judgment on the basis of such agency affidavits is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III.    DISCUSSION

Defendants move for summary judgment on the following grounds: "(1) the doctrine of res judicata bars much of Plaintiff's action, (2) Defendants' searches for records were reasonable, (3) Defendants properly withheld information pursuant to [FOIA]'s statutory exemptions, and (4) Defendants did not violate the Privacy Act." (Doc. 22 at 7.) In support of the MSJ, Defendants filed a declaration from Captain William D. Barnett, the II-MEF Adjutant and FOIA Coordinator (Doc. 22-2, Declaration of Captain William D. Barnett ["Barnett Decl."] ¶ 3), a declaration from Assistant U.S. Attorney Katherine L. Parker (Doc. 22-1, "Parker Decl. ¶ 1), and the *Vaughn* Index (*Id.*, Ex. 3 ["*Vaughn* Index"] at 56–77.) The Court addresses each argument in turn.

### A.    Res Judicata

Defendants argue that Plaintiff's claims challenging the searches conducted in response to the FOIA 2 Requests and FOIA Requests 3, 5–7 are barred by the doctrine of res judicata. (Doc. 22 at 9.) Specifically, Defendants contend that Plaintiff's attempts to "obtain [the 2016] CD" are precluded because he "fully litigated his entitlement to [the 2016] CD and the records on that CD" in *Carlborg I*. (*Id.*)

Res judicata, or claim preclusion, applies "when the earlier suit (1) involved the

same claim or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (cleaned up).  Claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411–12 (2020).  Here, the Parties do not dispute that *Carlborg I* involved the same parties as the present action and a final judgment on the merits.  Thus, the question is whether *Carlborg I* and the present case involve the "same cause of action."

### 1.    Same Claims

Defendants argue that Plaintiff's claims in *Carlborg I* and the present action involve the "same transactional nucleus of facts, and the same rights, which is the creation of a CD of records in response to Plaintiff's 2016 FOIA request, and Plaintiff's claimed right to access that information."  (Doc. 22 at 10 (internal quotation marks omitted.)

The Ninth Circuit considers four factors in determining whether there is an identity of claims between the present and previous cases:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005) (cleaned up). The fourth factor "is the most important" and is outcome determinative.  *Id*.; *see Int'l Union of Operating Engineers-Employers Constr. Indus. Pension, Welfare, & Training Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir.1993) (holding an action may be barred under res judicata without reaching the other factors where two claims arise out of the same transactional nucleus of fact).

In the FOIA context, federal courts have determined that "two suits involve the same nucleus of facts when they seek the same documents." *Elec. Priv. Info. Ctr. v. IRS*, 575 F. Supp. 3d 84, 92 (D.D.C. 2021) (citing *Negley v. FBI*, 169 Fed. App'x 591, 593–94 (D.C.

16

Cir. 2006)); *see Gonzalez-Lora v. DOJ*, 169 F. Supp. 3d 46, 53 (D.D.C. 2016) (holding res judicata and collateral estoppel barred second challenge to the agency's response to identical FOIA request); *Roman v. Nat'l Reconnaissance Off.*, 952 F. Supp. 2d 159, 164 (D.D.C. 2013) (finding res judicata precluded FOIA requester's second suit contesting the agency's search where a prior suit involved request for identical documents).  When two FOIA cases involve requests for the same documents, such cases necessarily implicate the "infringement of the same right" to the same documents, or the third relevant factor.  *See Benavides v. U.S. Marshals Serv.*, 990 F.2d 625, 625 (5th Cir. 1993) (affirming preclusion where the requestor "claimed *the right to obtain documents* that were generated pursuant to his arrest" in a prior suit and then sought "the same documents from the [agency] in the present lawsuit that he sought in the [prior] suit.") (emphasis added); *see also Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) ("If two actions involve the same injury to the plaintiff and the same wrong by the defendant, then *the same primary right is at stake* even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.") (emphasis added) (cleaned up).

As Plaintiff's present claims implicate multiple FOIA Requests, the Court addresses each FOIA Request to determine whether his claims in both actions arise from the same nucleus of facts and are therefore the same.

### a.  FOIA 2 Requests

The FOIA 2 Requests are various iterations of Plaintiff's request for the MCCOG's copy of the same e-mail records "produced in response to [the 2016 FOIA Request]."  (Doc. 22-3, Ex. 10 at 183.)  As the FOIA 2 Requests seek the same documents as the 2016 FOIA Request, and Plaintiff challenges the same conduct in response to those Requests, the Court finds that Plaintiff's claims in *Carlborg I* and the present action are the same.

While Plaintiff's claims are based on facially different FOIA Requests made years apart, the FOIA 2 Requests do not expand the scope of the 2016 FOIA Request.  Plaintiff seeks the same e-mail records from the same custodians within the same time frame.  The main difference is that Plaintiff now specifically seeks the MCCOG's copies of such

records.  (*See* Compl. ¶¶ 20, 25.)  However, any documents in the MCCOG's possession were necessarily covered by the MCCOG's original search of its files in response to the 2016 FOIA Request.  (*Id.* ¶¶ 20–21 (alleging the MCCOG "conducted the 2016 RECORDS search producing the [2016] CD" and forwarded its "copy of the records . . . for review and response."); *see* Doc. 22 at 10 ("[The MCCOG] searched for emails and provided them on a CD to the [II-MEF], which reviewed the CD for responsive emails.").)  Plaintiff is therefore seeking the same documents in the present lawsuit that he sought in *Carlborg I*. *See also Allnutt v. DOJ*, 99 F. Supp. 2d 673, 678 (D. Md. 2000), *aff'd sub nom. Allnut v. Handler*, 8 F. App'x 225 (4th Cir. 2001) ("[W]hen the initial request is so broad as to encompass nearly all documents relating to a particular issue, the methodology of the first search has been explained by the agency and held to be adequate, and the citizen was granted access to all responsive documents, the Court will not require the agency to prove for a second time that its search methods were reasonable.").

Instead of asserting a new claim, Plaintiff challenges the same alleged conduct forming the basis of his prior claims.  In *Carlborg I*, Plaintiff alleged that Defendant Navy's search in response to the 2016 FOIA Request was inadequate because it failed to produce certain responsive records.  (*See* D.C. Order [Doc. 22-5] at 123.)  Here, Plaintiff alleges that Defendant Navy's search is inadequate because it provided Plaintiff with an "identical copy" of the same records he previously received in response to the 2016 FOIA Request.  (Compl. ¶¶ 25–26.)  Plaintiff therefore challenges the same conduct for which he previously sought redress.  *See Sikes v. U.S. Dep't of Navy*, 896 F.3d 1227, 1236 (11th Cir. 2018) ("[I]f [Defendant] Navy had responded to [the plaintiff's] identical [FOIA Request] by giving him those same [pages of records]" that were determined to be a complete response to a duplicate request in the prior action, "[the plaintiff] might be barred from arguing that [Defendant] Navy should have given him anything more.").  Indeed, Plaintiff concedes that the FOIA 2 Requests are meant to capture additional e-mail records that he claims exist but the agency did not produce in response to the 2016 FOIA Request.  (*See* Doc. 24 at 8 ("This was the start of Plaintiff's quest . . . to obtain the records in these date

18

gaps that [the FOIA response coordinator] said existed and which [Defendant Navy] said did not.").)  The factual basis for Plaintiff's claims in both actions is therefore the same—Plaintiff seeks the e-mail records relating to his involuntary discharge that he claims Defendant Navy has but Defendant Navy claims it does not.  *See Kemp v. Grippen*, No. 06-C-0076, 2007 WL 870123, at *6 (E.D. Wis. Mar. 20, 2007) ("[T]he post-judgment requests did not create any new cause of action.  The 'core of operative facts' remained the same: [the plaintiff] is seeking medical records that he claims the [agency] has but the [agency] claims it does not.").  Thus, Plaintiff's present claims concerning the FOIA 2 Requests and his prior claims concerning the 2016 FOIA Request in *Carlborg I* constitute the same claim for purposes of claim preclusion.

Plaintiff further argues that res judicata is inapplicable because new evidence, namely a 2021 e-mail exchange between Plaintiff and a FOIA coordinator, demonstrates the existence of additional records and "highlights the lack of good faith" by Defendant Navy.  (Doc. 24 at 6.)  In the e-mail exchange, the FOIA coordinator who processed the FOIA 2 Requests informed Plaintiff that there were "a *significant* number of files" maintained for the 2016 FOIA Request within a specific time frame.  (Doc. 24 at 7 (emphasis in original); *see id*., Ex. 2 at 22.)  Plaintiff contends that this statement: (1) contradicts Defendant Navy's declaration in *Carlborg I* that no further records responsive to the 2016 FOIA Request exist; and (2) supports his claim that the 2016 CD reviewed while processing his FOIA Request "was not the original CD provided to the [II-MEF] in 2016 [and] a fabricated CD with records removed was put in its place."  (*Id*. at 6–7 n.1.)

However, these statements do not negate the preclusive effect of res judicata on the current action.  *See Vahora v. Valley Diagnostics Lab'y, Inc.*, Case No. 1:19-cv-00912-DAD-SKO, 2020 WL 42242, at *7 (E.D. Cal. Jan. 3, 2020), *report and recommendation adopted in part sub nom*. *Vahora v. Valley Diagnostic Lab'y Inc.*, 2020 WL 1061470 (E.D. Cal. Mar. 5, 2020) ("Newly discovered evidence typically does not prevent the application of res judicata.").  While Plaintiff seems to suggest that this new evidence demonstrates the D.C. judgment was obtained through fraud (*see* Doc. 24 at 6), the Ninth Circuit has not

recognized a fraud exception to res judicata.  *See Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982) ("We need not decide whether there is a fraudulent concealment exception to the law of res judicata because no fraudulent concealment has been properly presented.").  To the extent there is a fraud exception to res judicata, it is nonetheless inapplicable in this case because Defendant Navy's prior denial did not prevent Plaintiff from knowing that he may have a viable claim based on the alleged existence of additional responsive records in *Carlborg I*.  *See id.* at 1203 n.12 (noting the fraudulent concealment exception applies only "where defendant's misconduct prevented plaintiff from knowing, at the time of the first suit, either that he had a certain claim or else the extent of his injury.").  In fact, the D.C. Court considered and rejected Plaintiff's similar arguments that the agency's search was inadequate because it failed to produce certain documents from the same time frame.  (*See* Doc. 22-5, Ex. 6 at 133.)

As these claims arise from the same nucleus of facts, involve the same parties, and the D.C. Court entered a final judgment on the merits, the Court finds that Plaintiff cannot now relitigate the same claim with respect to the 2016 FOIA Request.

### b.  FOIA Request 3

In FOIA Request 3, Plaintiff requested "a copy of any email (with a copy of any attachments) sent to/from [11 individuals] from October 1, 2020 [to the date of the search]." (Doc. 22-3 at 172; *see* Compl. ¶ 40.)  While FOIA Request 3 contains language similar to the 2016 FOIA Request, Plaintiff seeks e-mails sent or received over two years *after* he filed his D.C. complaint in 2018.

Because Plaintiff could not have brought a claim in *Carlborg I* based on documents post-dating the D.C. Court's final order, such claims are not barred under the doctrine of res judicata.  *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) ("While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) ("[C]laim preclusion does not apply to claims that accrue

20

after the filing of the operative complaint [in the prior action].").

### c. FOIA Request 5

In FOIA Request 5, Plaintiff requests "a copy of the file properties from the [2016] CD created . . . in support of [the 2016] FOIA Request." (Doc. 22-3 at 69.) This Request references the 2016 FOIA Request and thus relates to the same responsive records. However, Plaintiff seeks the file properties of such records, not the e-mail records themselves. (*See id.* ("Specifically, [Plaintiff] request[s] a copy of the properties of each file on the [2016] CD from the dialog box tab that includes name of file, size, and the creation date which is registered for each file.").) The Court finds there is sufficient nuance between the two claims to caution against treating them as the same because FOIA Request 5 seeks different records than those litigated in *Carlborg I*.

### d. FOIA Requests 6 and 7

Plaintiff's FOIA Request 6 seeks a copy of the records contained in the 2016 CD but in "screenshot" format according to his listed specifications. (*See* Doc. 22-3, Ex. 4 at 83, 87; Compl. ¶ 57.) Similarly, FOIA Request 7 seeks "a copy of the records that list what is within the copy of the .pst created in response to [the 2017 FOIA Request]." (Doc. 22-3, Ex. 4 at 88.) Defendant Navy denied both Requests as duplicative of the 2016 and 2017 FOIA Requests and did not conduct a search because "it would yield no new results." (Barnett Decl. [Doc. 22-2] ¶¶ 24–25, 28–29.)

Despite the fact that FOIA Requests 6 and 7 reference the 2016 and 2017 FOIA Requests respectively, they seek screenshots containing information that was not originally requested in the 2016 and 2017 FOIA Requests, such as the size of each file. *See Stevens v. Broad. Bd. of Governors*, No. 18-CV-5391, 2021 WL 1192672, at *3 (N.D. Ill. Mar. 30, 2021) ("A screenshot is a representation of a program in action . . . [and] is not, then, comparable to producing the same document on either a CD-ROM or a flash drive.").

Additionally, Plaintiff's claims are based on different conduct than that previously challenged in *Carlborg I*. In *Carlborg I*, Plaintiff's claims arose from Defendant Navy's searches and withholdings in response to the 2016 and 2017 FOIA Request. In contrast,

Plaintiff's current claims are based on Defendant Navy's failure to conduct *any* search or produce *any* records in response to FOIA Requests 6 and 7 (*see* Compl ¶¶ 58, 62). *See Sikes*, 896 F.3d at 1236 (holding a FOIA requestor was not precluded from challenging the Navy's failure to provide *any* records in response to the plaintiff's second, albeit duplicate, request). Thus, Plaintiff's claims concerning FOIA Requests 6 and 7 are not the "same" as those litigated in *Carlborg I*. *See Negley*, 589 F. App'x at 729 ("[Two different FOIA] requests might seek information related to a common nucleus of operative facts . . . but the suits are in response to distinct FOIA requests and the alleged failures of the [agency] flowing from those requests.").

## 2. Conclusion

The Court finds that Plaintiff's claims arising from the FOIA 2 Requests are precluded under the doctrine of res judicata. While Plaintiff's claims based on FOIA Requests 3, 5–7 are not precluded, the Court turns to the merits of these claims. For the reasons discussed *infra*, the Court concludes that summary judgment is warranted independently on the merits.

## B. Adequacy of the Searches (Count 7)

An adequate search is one that is "reasonably calculated to uncover all relevant documents." *Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 879 (9th Cir. 2024). "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Hum. Rts.*, 45 F.3d at 1328. "[T]he issue 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was *adequate*.'" *Hamdan v. DOJ*, 797 F.3d 759, 770–71 (9th Cir. 2015) (quoting *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009)) (emphasis in original). "In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571 (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Defendants argue that their searches in response to Plaintiff's FOIA 2 Requests and

FOIA Requests 3, 5, 6, and 7 were reasonable and adequate. (Doc. 22 at 11–12.)[12] In support of their contentions, Defendants provide the Captain William D. Barnett's ("Barnett") declaration. (Barnett Decl. [Doc. 22-2].) He is responsible for analyzing and responding to "FOIA requests for documents within the control and possession of II MEF Command Element and the Major Subordinate Commands." (*Id.* ¶ 3.) The Court relies on the "reasonably detailed, nonconclusory" statements in Barnett's declaration to determine whether Defendants' searches in response to Plaintiff's multiple FOIA Requests were reasonable. *See Zemansky*, 767 F.2d at 571 (internal quotation marks omitted); *see also Lahr*, 569 F.3d at 990 ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy the personal knowledge requirement of Federal Rule of Civil Procedure 56(e).") (cleaned up).

### 1.    FOIA Request 3

In FOIA Request 3, Plaintiff sought e-mails and accompanying attachments sent to or from eleven named individuals which included the term "Carlborg" that were sent or received from October 1, 2020 to the date of the search. (Doc. 22-3 at 172; Barnett Decl. [Doc. 22-2] ¶ 13.) In response, Defendant Navy searched the eleven individuals' e-mail boxes for the keyword "Carlborg." (Barnett Decl. [Doc. 22-2] ¶ 15.)

As Defendants note, "Plaintiff does not address this evidence and has not identified any alleged deficiencies in Defendants' search efforts." (Doc. 25 at 4.) Additionally, by using Plaintiff's name to search through the e-mail records of the specified individuals during the requested time frame, the Court finds that the agency satisfied its burden to show it conducted a search that was "reasonably calculated to discover the requested documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

### 2.    FOIA Request 5

In FOIA Request 5, Plaintiff requested "a copy of the properties of each file on the

---

[12] As the Court concluded that Plaintiff's claims concerning the FOIA 2 Requests are precluded (*see* Sec. III.A.1.a), the Court need not reach the merits of such claims.

[2016] CD from the dialog box tab that includes name of file, size, and the creation date which is registered for each file." (Doc. 22-3 at 69, 77; *see* Barnett Decl. [Doc. 22-2] ¶ 17.) The agency searched the II-MEF's local digital files for the term "WO212705," or the internal work order number used to create the 2016 CD. (Barnett Decl. [Doc. 22-2] ¶¶ 17–19.) It then located "eight .pst files that were previously received from [the] MCCOG in the 2016 FOIA [R]equest," and prepared the screenshots in the format Plaintiff requested. (*Id.* ¶¶ 19–21.) The Court finds Defendant Navy's search was reasonably calculated to uncover all documents responsive to FOIA Request 5.

In his administrative appeal, Plaintiff challenged the adequacy of the agency's search on the grounds that the location listed for each of the released records was from a shared network, not from the 2016 CD as he requested. (Doc. 22-3 at 58; *see* Compl. ¶ 55.) However, as Plaintiff has been made aware, the 2016 CD no longer exists. (*See* Doc. 22-3, Ex. 1 at 59 ("As an initial matter, the [2016] CD, which you have requested on multiple occasions, no longer exists. This fact was relayed to [Plaintiff.]").) As the II-MEF was "the last organization to have been in possession of" the 2016 CD (Doc. 22-3, Ex. 1 at 4), the agency searched for records in a location likely to yield responsive material. *See Colgan v. DOJ*, Civil Action No. 14-cv-740 (TSC), 2020 WL 2043828, at *5 (D.D.C. Apr. 28, 2020) ("To conduct an adequate search, an agency must . . . aver that all files likely to contain responsive materials (if such records exist) were searched.") (cleaned up). Thus, Defendant Navy's search constitutes "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017).

### 3.    FOIA Requests 6 and 7

In FOIA Requests 6 and 7, Plaintiff seeks screenshots of records "created in response" to the 2016 and 2017 FOIA Requests. Defendant Navy determined that Plaintiff "effectively [asks the agency] to create new records of responsive records that [Plaintiff] had already received." (Doc. 22-3, Ex. 4 at 88–89.) Plaintiff contends that his Requests

24

for screenshots "is not creating a record as it is the only way of providing a copy of the record."  (Doc. 24 at 8.)

While the agency may have provided screenshots on other occasions (*see id*.), "FOIA imposes no duty on the agency to create records."  *Forsham v. Harris*, 445 U.S. 169, 186 (1980); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained.").  Based on this precedent, courts have found that an agency is not required to produce screenshots.  *See Brown v. Perez*, 835 F.3d 1223, 1237 (10th Cir. 2016), *as amended on reh'g* (Nov. 8, 2016) ("[F]or the government to produce the requested printouts, it would have to open the software, input the relevant data, and recreate a screen image that could be captured and produced.  Because FOIA does not require an agency to create records, [it] need not undertake that process."); *Stevens*, 2021 WL 1192672, at *3 (holding an agency is not required to take screenshots of a software program as a screenshot is not a "form" of the program); *Colgan v. DOJ*, No. 14-cv-740 (TSC), 2020 WL 2043828, at *10 (finding an agency was not required to produce screenshots of a search screen because it "is not retained as a record").

In FOIA Request 6, Plaintiff provided the agency with lengthy instructions on how to create the requested records.  (*See* Doc. 22-3, Ex. 4 at 85 (providing FOIA Request 6 in its entirety); *id*. at 88 (requesting records responsive to FOIA Request 7 be created in the same manner as specified in FOIA Request 6).)   To produce Plaintiff's requested screenshots, the agency would need "to open the software and create a screenshot, which would *not otherwise exist* from the last time the agency opened the software . . . ."  *Colgan*, 2020 WL 2043828, at *10 (emphasis added).  As such, Plaintiff's instructions confirm that the agency had not already "created and retained" the requested records.  *See Kissinger*, 445 U.S. at 152.  FOIA Requests 6 and 7 are therefore beyond the scope of FOIA.

### 4.    Conclusion

For these reasons, the Court determines that no genuine issue of material fact

precludes summary judgment on the adequacy of Defendants' searches.  Defendants' MSJ is therefore **GRANTED** as to Count 7.

### C.    FOIA Withholdings (Count 4)

As set forth above (*see* Sec. I.E.2), Defendants' withholdings under Exemption 6 are the only remaining withholdings in dispute.  Defendants assert that they applied Exemption 6 to redact the personally identifiable information ("PII") of third parties and government employees from records responsive to Plaintiff's FOIA and Privacy Act Requests.  (Doc. 22 at 12–17.)  Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  As relevant here, "names and identifying information contained in [agency reports] meet the 'similar file' requirement."  *Forest Serv. Emps. for En't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008).

Where redacted information is a "similar file" covered by Exemption 6, "a court must balance the public interest in disclosure against the [privacy] interest Congress intended the [e]xemption to protect."  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).  Courts in the Ninth Circuit employ a two-step burden shifting analysis to determine whether the information was properly withheld.  *Rojas*, 941 F.3d at 404.  "First, the agency must show that there is a nontrivial privacy interest against disclosure."  *Pomares*, 113 F.4th at 883 (citing *Rojas*, 941 F.3d at 405).  "[I]f the agency makes that showing, the requester must show that the public interest in disclosure outweighs the asserted privacy interest."  *Id.*  To do so, the requester "must show some nexus between the specific requested information and unveiling agency misconduct[.]"  *Lahr*, 569 F.3d at 978.

The *Vaughn* Index describes the redactions applied to the representative withholdings under Exemption 6, which include the names, social security numbers, telephone numbers, e-mail addresses, military rank, and signatures of third parties and government employees.  (*See, e.g.*, *Vaughn* Index [Doc. 22-1, Ex. 3] at 73–76; Barnett Decl. [Doc. 22-2] ¶¶ 35, 38, 44.)  Plaintiff maintains that he is entitled to this information

26

because "the names and emails of the individuals withheld are those of government employees acting in their official capacity and disclosure is what the FOIA demands." (Doc. 24 at 10.)  The Court considers the *Vaughn* Index and addresses the challenged Exemption 6 withholdings as well as the sufficiency of the Defendants' justifications for its withholdings.[13]

### 1.    Privacy Interest

"[T]he standard for recognizing a nontrivial privacy interest is not demanding.  An agency must show that the disclosure would affect employees' 'control of information concerning their persons' or expose them to harassment." *Pomares*, 113 F.4th at 884 (quoting *Rojas*, 941 F.3d at 405) (cleaned up); *see Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 638 (9th Cir. 2017) ("Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6.").

Plaintiff relies on passing references in a Supreme Court case to argue that the term "private citizen" does not include government employees and should therefore "not [be] afforded privacy protection under [E]xemption (b)(6) for their official work." (Doc. 24 at 10–11 (citing *Reporters Comm.*, 489 U.S. at 774.)  The Supreme Court, however, has already rejected such contentions. *See U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 489 (1994) (holding disclosure of federal civil service employees' home addresses constitutes a "clearly unwarranted invasion" of their personal privacy interests under Exemption 6). Further, the Ninth Circuit has recognized that government employees "have a nontrivial privacy interest" in keeping information, such as their names and contact information, from being disclosed. *Pomares*, 113 F.4th at 884; *see also Forest Serv. Emps. for Env't Ethics*, 524 F.3d at 1025 ("[N]either the employees' status as civil servants nor [the agency's] disciplinary decisions strip them of their privacy interests under Exemption 6.").  While

---

[13] The sufficiency of the *Vaughn* Index is undisputed.

"individuals do not waive all privacy interests in information relating to them simply by taking an oath of public office, . . . their privacy interests are somewhat reduced." *Lahr*, 569 F.3d at 977.

In this case, Defendants redacted the names and contact information pertaining to third party private individuals and several government employees involved in the agency's internal FOIA or BCNR investigations such as: (1) "uniformed and civilian" lawyers for the USMC and the Navy, including lawyers for the Judge Advocate General ("JAG") and the Office of the Government Counsel ("OGC") (*see, e.g.*, Doc. 22-1, Ex. 3 at 56–62 (addressing FOIA Request 1), 67 (addressing FOIA Request 4)); (2) civilian FOIA personnel (*id*. 67–68 (addressing FOIA Request 4)); (3) BCNR members with a civilian paygrade below "Senior Excepted Service" (*id*. at 72 (addressing the BCNR Request); *see* Doc. 22 at 13); and (4) majors, officers, colonels, and lieutenant colonels (*id*. at 63 (addressing FOIA Request 4); *id*. at 73–76 (addressing FOIA Request 3)).  Defendants argue that disclosure of these employees' PII "could result in the risk of annoyance, harassment, and interruption in their performance of their work functions." (*Id*. at 71.)

The Court finds that these government employees maintain a privacy interest in their personal identities where such disclosure would affect their "control of information concerning [their] person[s]" or expose them to harassment.  *Rojas*, 941 F.3d at 405 (quoting *Reps. Comm.*, 489 U.S. at 763); *see Halpern v. FBI*, 181 F.3d 279, 297 (2d Cir. 1999) (holding that government employees have an interest against the disclosure of their identities to the extent that disclosure might subject them to embarrassment or harassment in their official duties or personal lives).  Supervisory employees, such as USMC majors, officers, colonels, may have less interest in personal privacy than lower-level employees but still retain a "nontrivial" interest against disclosure of their identities and contact information.  *See Pomares*, 113 F.4th at 884; *see also Dobronski v. FCC*, 17 F.3d 275, 280 (9th Cir.1994) ("[L]ower level officials . . . generally have a stronger interest in personal privacy than do senior officials.").

Moreover, private third party individuals have a greater privacy interest than

government employees because their "identities are less closely connected to government functioning, which is the public interest recognized by FOIA." *Pomares*, 113 F.3d at 884; *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 938 (D.C Cir. 1982) ("[Exemption 6] provides greater protection to private individuals"). In a record responsive to the BCNR Request, for example, Defendants redacted the name and case information of a third party individual whose "Board for Correction" case was heard by the same board on the same day as Plaintiff. (*Vaughn* Index [Doc. 22-1, Ex. 3] at 77; *see* Doc. 22-1, Ex. 2 at 53–54.) As Defendants note, "the perception that one is seeking a records correction can create the impression that there was something derogatory or negative in the record." (*Id*.) Private individuals, such as this third party applicant, have a cognizable privacy interest in their identities. *See Reporters Comm.*, 489 U.S. at 780 ("When the subject of [the records] is a private citizen . . . the privacy interest . . . is at its apex.").

Finally, the Court notes that the *Vaughn* Index did not identify the role of certain employees whose PII was redacted in response to a prior FOIA request. (*See Vaughn* Index [Doc. 22-1, Ex.3] at 72–73.) Although the Court "cannot fully evaluate the strength of [that] interest," such employees retain a nontrivial privacy interest in their personal identities. *See Pomares*, 113 F.4th at 884 ("[T]he standard for recognizing a nontrivial privacy interest is not demanding.").

### 2. Public Interest

As Defendants have shown a nontrivial privacy interest in the redacted information, the burden shifts to Plaintiff to "show that the public interest in disclosure outweighs the asserted privacy interest." *Pomares*, 113 F.4th at 883. However, Plaintiff argues that he should not be required to make this showing because "[t]here is no public interest determination as it was never part of the FOIA language." (Doc. 24 at 13–14.) Plaintiff further contends he has "no requirement [under FOIA] other than to adequately describe the records for the agency to conduct a search." (*Id*.) The Court disagrees and finds that Plaintiff's purported statutory interpretation runs contrary to Supreme Court precedent.

In adopting Exemption 6, "Congress sought to construct an exemption that would

require a balancing of the individual's right of privacy against the preservation of the basic purpose of [FOIA] to open agency action to the light of public scrutiny." *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976) (emphasis added) (cleaned up). As such, the Supreme Court has determined that "[w]here the privacy concerns . . . are present, the exemption *requires the person requesting the information to establish a sufficient reason for the disclosure*." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004) (emphasis added).[14]

As Defendants have identified cognizable privacy interests, the burden shifts to Plaintiff to establish that invasion of those privacy interests is not "clearly unwarranted" based on any existing public interest in disclosure of the redacted information. *Lahr*, 569 F.3d at 973. "[T]he only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Rojas*, 941 F.3d at 405 (quoting *Bibles v. Or. Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997)). In determining the public's interest in knowing a government employee's identity, courts consider the employee's rank and whether such information would likely disclose official misconduct. *See Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) (reasoning the "level of responsibility held by a federal employee . . . [is an] appropriate consideration[] for determining the extent of the public's interest in knowing the identity of that censured employee").

In this case, the identities of employees involved in processing the agency's FOIA requests or in its internal investigations as BCNR members would reveal "little or nothing" about Defendants' conduct other than information already available to Plaintiff. *See*

---

[14] Although *Favish* discusses Exemption 7, its reasoning is nonetheless applicable. *See Cameranesi*, 856 F.3d at 638 ("[B]ecause both Exemption 7(C) and Exemption 6 'require balancing the public interest with personal privacy, cases interpreting the interest in personal privacy with regard to one of the two exemptions are useful in the context of the other.'") (quoting *Yonemoto*, 686 F.3d at 693 n.7).

*Davidson v. Dep't of State*, 206 F. Supp. 3d 178, 200 (D.D.C. 2016).  Although Plaintiff does not attempt to assert any public interest in such disclosure, he suggests that an e-mail record from the 2016 FOIA Request may "potentially [be] a violation of [his] medical privacy rights under the Health Insurance Portability and Accountability Act" because "one of [his] medical documents" was forwarded to an employee "who may or may not have had a legal reason" to view it.  (Doc. 24 at 12.)  Plaintiff, however, does not identify these documents or allege "more than a bare suspicion" of wrongdoing to overcome the presumption of legitimacy accorded to Defendants' conduct.  *See Favish*, 541 U.S. at 174 ("[T]he requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."); *see also Beck v. DOJ*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) ("The identity of one or two individual relatively low-level government wrongdoers, released in isolation, does not provide information about the agency's own conduct.").[15]

As these employees' identities and contact information would not shed light on Defendants' performance of their statutory duties, and Plaintiff makes no argument asserting a public interest in knowing such information, the general public's interest in such disclosure is minimal at best.  *See Pomares*, 113 F.4th at 885 ("[E]mail addresses may add to the risk of privacy invasion with little additional benefit to the public interest."); *see, e.g.*, *Davidson*, 206 F. Supp. 3d at 200 (finding there was "no public interest" in knowing "the names and contact information" of State Department employees because it would reveal "little or nothing more about the Department's conduct"); *Kearns v. FAA*, 312 F. Supp. 3d 97, 112 (D.D.C. 2018) (finding the public's interest in disclosing "the names, other identifying information, and personal data" of third parties involved in internal

---

[15] The Court also notes that Plaintiff is precluded from raising this argument because the referenced document was produced in response to the 2016 FOIA Request and he could have raised the issue in *Carlborg I*. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

investigations was "nil" because it would not "shed light on the [agency's] performance of its statutory duties").

Accordingly, the Court determines that these individuals' interest in keeping their names and other PII private outweighs any public interest in the disclosure of this information and **<u>GRANTS</u>** the MSJ as to Count 4 on the representative withholdings asserted in the *Vaughn* Index.

### D. Privacy Act (Count 6)

As an example of an improper withholding under the Privacy Act, Plaintiff identified a record titled "Recorder's Log" which was produced in response to the BCNR Request. (*See* Doc. 22-1, Ex. 2 at 53.)    Defendants redacted information under Exemption 6 pertaining to a third party individual such as the individual's name, the board's votes as to the individual's application to correct his or her military record, and other information related to the individual's case.  (*Vaughn* Index [Doc. 22-1, Ex. 3] at 77; *see* Doc. 22-1, Ex. 2 at 53.)  Plaintiff now challenges these withholdings as improper under the Privacy Act, arguing that the redacted information "does not meet the statutory criteria of a record [under the Privacy Act] and therefore it cannot be withheld."  (Doc. 24 at 15; *see* Compl. ¶¶ 67, 77 ("[A] FOIA exemption cannot be the sole justification for withholding under the [Privacy Act].").)  Defendants respond that release of this information would violate the Privacy Act because "the redacted information pertains to a different third-party BCNR applicant[,] . . . does not apply [to Plaintiff,]" and "is not in a system of records pertaining to" Plaintiff.  (*Vaughn* Index [Doc. 22-1, Ex. 3] at 77.)

The Court already determined that Defendants properly withheld such information under Exemption 6.  (*See* Sec. III.C.1).  However, "[i]f a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act."  *See Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987); 5 U.S.C. § 552a(g) ("No agency shall rely on any exemption contained in [FOIA] to withhold . . . any record which is otherwise accessible to such individual under the provisions of this section.").  The Court must therefore determine

whether the Privacy Act allows Plaintiff access to the redacted information.

The Privacy Act allows any individual to obtain access to "his record or to any information pertaining to him" that are within a "system of records" maintained by a federal agency." 5 U.S.C. § 552a(d)(1). However, unlike FOIA, "[t]he Privacy Act . . . does not have disclosure as its primary goal." *Henke v. U.S. Dep't of Com.*, 83 F.3d 1453, 1456 (D.C. Cir. 1996). As such, the Privacy Act prohibits agencies from disclosing "any record which is contained in a system of records . . . except pursuant to a written request by, or with the prior consent of, the *individual to whom the record pertains*." 5 U.S.C. § 552a(b) (emphasis added).

The Privacy Act defines a record as:

any item, collection, or *grouping of information about an individual* that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4) (emphasis added). To qualify as a record "subject to restrictive disclosure, [the material] must reflect some quality or characteristic about [the individual]." *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1449 (9th Cir. 1985); *see Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184, 188 (5th Cir. 2007) ("To be a Privacy Act record, the information must be both (1) 'about' the individual and (2) linked to that individual by name or identifying particular."); *Boyd v. Sec'y of the Navy*, 709 F.2d 684, 686 (11th Cir. 1983) ("A record must reflect some quality or characteristic of the individual involved.") (citing S.Rep. No. 1183; 93d Cong., 2d Sess.).

Here, Defendants redacted a "grouping of information" that identifies the third-party individual by name and details that individual's application history to correct his or her military records. (*See Vaughn* Index [Doc. 22-1, Ex. 3] at 77.) Plaintiff does not dispute that the unredacted portions of the Recorder's Log constitute his record as it fully discloses information about his own application. For the same reasons, the redacted information

33

constitutes a record pertaining to the third-party individual, not Plaintiff.

Plaintiff relies on a single case where the Eighth Circuit held that the Privacy Act requires disclosure of all material in a requester's record even if it contains information that does not pertain to the requester. (Doc. 24 at 16 (citing *Voelker v. IRS*, 646 F.2d 332, 334 (8th Cir. 1981).) Courts in the Ninth Circuit, however, have determined that "[u]nder the Privacy Act, an individual may gain access to nonexempt records *only if they concern him or her*." *Exner v. FBI*, 612 F.2d 1202, 1207 (9th Cir. 1980) (Pregerson, J., concurring) (emphasis added); *see Schulze v. FBI*, No. 1:05-CV-0180AWIGSA, 2010 WL 2902518, at *12 (E.D. Cal. July 22, 2010) (holding Privacy Act claims could not be maintained for "withholding records pertaining to third persons"); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1046 (N.D. Cal. 2005) ("The Privacy Act gives an individual access to records which *pertain to him* and are found in a system of records maintained by an agency.") (emphasis added); *Oram v. Wilkie*, No. C21-75RSM, 2021 WL 5014537, at *3 (W.D. Wash. Oct. 28, 2021) ("Critically, the Privacy Act only authorizes disclosure of a record if it pertains to the requester."); *accord Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1121 (D.C. Cir. 2007) (holding the Privacy Act grants "parties access only to their own records, not to all information pertaining to them that happens to be contained in a system of records.").

As in this case, "when materials pertain to both a Privacy Act requester and other individuals from whom the agency has received no written consent permitting disclosure, the Privacy Act's prohibition on disclosing information without written consent 'must take precedence,' and the portions of the record pertaining to those third parties must be withheld." *Mobley v. CIA*, 924 F. Supp. 2d 24, 57 (D.D.C. 2013) (quoting *Sussman*, 494 F.3d at 1121); *see Carlborg v. Dep't of the Navy,* No. 18-CV-1881 (DLF), 2020 WL 4583270, at *7 (D.D.C. Aug. 10, 2020), *aff'd sub nom. Carlborg v. United States Dep't of the Navy*, No. 20-5311, 2021 WL 1049467 (D.C. Cir. Mar. 8, 2021) (quoting the same). Because the redacted information is a record pertaining to an individual that is *not* Plaintiff, and Plaintiff does not provide evidence of that individual's consent to such disclosure, this is the type of disclosure the Privacy Act prohibits. *See* 5 U.S.C. § 552a(b). Defendants

have therefore properly withheld this information under the Privacy Act. Accordingly, Defendants' MSJ is **GRANTED** as to Count 6.

### E.    Remaining Claims

Plaintiff argues that the Court should grant him judgment as to Count 1 for delay in processing as to the remaining DOD Request only and Count 8 for failure to provide records in the format requested. (Doc. 24 at 10, 16.) Defendants respond that Plaintiff "waived" these issues through the ENE process and such issues are therefore improperly before the Court. (Doc. 25 at 2.)

#### 1.    Count 1—Statutory Delay

As a preliminary matter, the Court finds that Plaintiff's statutory delay claims, based on the DOD Request, are moot. In his Opposition, Plaintiff requests that the Court "direct Defendant Department of Defense to provide a response" to his administrative appeal of the DOD Request. (Doc. 24 at 9.) By filing the current lawsuit, however, Plaintiff has availed himself of the only remedy FOIA provides for an agency's delay in processing a requestor's FOIA request. *See Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189–90 (D.C. Cir. 2013) (holding the only remedy for an agency's delayed processing of a FOIA request is the ability to file suit without first exhausting administrative remedies). Indeed, Plaintiff challenged Defendants' withholdings in response to the DOD Request. (*See* Compl. ¶ 77.) However, as discussed *supra*, the Court found that such withholdings were proper under Exemption 6 and the Privacy Act. As the agency's alleged delay in processing the administrative appeal does not provide grounds for denying summary judgment, there is nothing further for the Court to adjudicate on this issue. *See Yonemoto*, 686 F.3d at 689 (holding that an agency's production of all non-exempt information, "however belatedly, moots FOIA claims.").

#### 2.    Count 8—Format

As to Count 8, the Court finds that Plaintiff agreed to narrow the scope of the litigation and therefore waived this claim. "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (cleaned

up).  "Courts generally enforce stipulations that narrow the issues in a case." *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990); *see United States v. Burch*, 156 F.3d 1315, 1321 (D.C. Cir. 1998) ("[I]n the absence of an affirmative indication that Congress intended to preclude or to limit the waiver of statutory protections . . . voluntary agreements to waive [those] protections are presumptively enforceable").  "Just as a party may agree to narrow the case during a pretrial conference, a FOIA plaintiff may agree to do so in a written status report." *Am. Ctr. for L. & Just. v. DOJ*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) (citing *Genereux v. Raytheon Co.*, 754 F.3d 51, 57–59 (1st Cir. 2014)).  The common law concept of waiver still applies in such cases, which "includes inferences from the words and actions of the parties." *Cayuga Nation v. U.S. Dep't of Interior*, No. CV 20-2642 (ABJ), 2022 WL 888178, at *4 (D.D.C. Mar. 25, 2022) (quoting *Molton, Allen & Williams, Inc. v. Harris*, 613 F.2d 1176, 1179 (D.C. Cir. 1980)).

In this case, both Parties expressly agreed to narrow the scope of this litigation prior to briefing the instant MSJ.  *See Am. Ctr. for L. & Just.*, 325 F. Supp. 3d at 168 ("Having voluntarily narrowed the case to a set of agreed-upon issues, the plaintiff may be said to have waived the others.").  In the Joint Case Management Statement, "the [P]arties agree[d] that this case should be resolved via summary judgment briefing on the [three] issues listed." (Doc. 14 at 4.)  The Parties' agreement is again reflected in the subsequent Joint Report where they reiterated the same three legal issues in their "[a]greed-upon list of other areas of dispute to be submitted via summary judgment."  (*See* Parker Decl. [Doc. 22-1], Ex. 1 at 5.)  As there was no further mention of the formatting issue or any other areas of dispute in either agreement, Defendants had no notice to prepare argument or otherwise address such issues in the MSJ.

While courts may decline to enforce such waivers "where it would be unjust to do so," the Court finds that enforcing Plaintiff's waiver in this case would not be unjust or unreasonable.  *See id*. at 169–70 (noting cases where courts declined to enforce waivers such as a criminal defendant's waiver of the right to appeal where there is a "colorable claim of ineffective assistance of counsel" and in FOIA litigation where "a showing of

36

good cause is required to reintroduce an issue that has been explicitly waived") (quoting *United States v. Adams*, 780 F.3d 1182, 1183 (D.C. Cir. 2015); *Shapiro v. DOJ,* No. 13-555 (RDM), 2016 WL 3023980, at \*6–7 (D.D.C. May 25, 2016)).   Indeed, Plaintiff received records responsive to FOIA Requests 3 and 4, albeit in a single PDF file as opposed to individual PDFs as requested, and had several opportunities to discuss any formatting issues with Defendants during the meet-and-confer process.[16]   Based on the Parties' agreement to limit the Court's involvement to only three issues, and Defendants' reliance thereon, the Court finds that Plaintiff knowingly and voluntarily waived his right to raise such issues.  *See Am. Ctr. for L. & Just.*, 325 F. Supp. 3d at 168 ("[B]y agreeing to limit the Court's involvement to deciding the parties' dispute about [the agency's] withholdings, [plaintiff] knowingly and voluntarily waived all other issues it might reasonably have anticipated"); *see also Marcotte v. Palos Verdes Peninsula Unified Sch. Dist.*, No. CV 08-1671 PSG (PLAx), 2009 WL 1873024, at \*14 (C.D. Cal. June 29, 2009) (finding the plaintiff waived additional claims where she "only identif[ied] one claim in the Joint Status Report, [and] indicated her intent to pursue only that claim at trial.").

## IV.    CONCLUSION

Based on the foregoing reasons, Defendants' MSJ (Doc. 22) is **GRANTED**.  The Clerk of Court is instructed to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

DATE:  July 17, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[16] In denying Plaintiff's administrative appeal of FOIA Request 3, the agency reasoned that "reproducing the records in separate files would entail executing a new review of approximately 2.3 gigabits of data over the course of roughly an additional 40 to 50 hours" which it deemed "an undue burden to provide records already in the possession of" Plaintiff.  (Doc. 22-3, Ex. 2 at 21.)